```
            IN THE UNITED STATES DISTRICT COURT
         FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
                       AT BLUEFIELD
```

**DANNY R. SPENCER,**

    **Plaintiff,**

**v.**                                              **Civil Action No. 1:05-0845**

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security,**

    **Defendant.**

<u>**MEMORANDUM OPINION**</u>

On March 1, 2007, this court entered a Judgment Order in this matter that adopted the Magistrate Judge's Proposed Findings and Recommendation, denied the plaintiff's motion for summary judgment, granted the defendant's motion for judgment on the pleadings, affirmed the final decision of the Commissioner, and dismissed this matter from the court's docket.  This Memorandum Opinion explains the reasons for the court's Judgment Order.

By Standing Order entered on September 20, 2005, and filed in this case on October 21, 2005, this matter was referred to United States Magistrate Judge R. Clarke VanDervort.  (Doc. No. 3.)  Pursuant to 28 U.S.C. § 636(b)(1)(B), the Standing Order directs Magistrate Judge VanDervort to submit proposed findings and recommendation concerning the disposition of this matter.  On February 1, 2007, Magistrate Judge VanDervort submitted his Proposed Findings and Recommendation.  (Doc. No. 15.)  Plaintiff filed his objections on February 13, 2007 (Doc. No. 16), and defendant replied to plaintiff's objections on February 15, 2007

(Doc. No. 17).  The court has conducted a de novo review of the case.

### A.  Plaintiff's Objections

In his objections, plaintiff asserts that the final decision of the Commissioner was not supported by substantial evidence. (See Doc. No. 16 at 1.)  Specifically, plaintiff objects that:

(1) the administrative law judge ("ALJ") erred in his evaluation of the severity of plaintiff's mental impairments;

(2) the ALJ erred in not giving proper weight to plaintiff's treating sources' opinions; and

(3) the Commissioner has not met his burden of establishing that there is work in the national economy that plaintiff can perform.

(See id. at 1-10.)  This court will discuss each of plaintiff's objections.

### B.  Standard of Review

The court's review is limited to a determination as to whether there is substantial evidence to support the Commissioner's conclusion that plaintiff failed to meet the conditions for entitlement established by and pursuant to the Social Security Act.  If such substantial evidence exists, the final decision of the Commissioner must be affirmed.  Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).  Stated briefly, substantial evidence has been defined as such relevant evidence, considering the record as a whole, as might be found adequate to

support a conclusion by a reasonable mind.  Richardson v. Perales, 402 U.S. 389, 401 (1971).

### C. Legal Analysis

#### 1. The ALJ's Consideration of Plaintiff's Mental Impairments.

Plaintiff's first objection is that his mental impairments are more limiting than the ALJ concluded.  (See Doc. No. 16 at 1-2.)  The magistrate judge concluded that the ALJ's determination was in conformity with the applicable law and regulations and was supported by substantial evidence.

An ALJ must follow certain "special techniques" when evaluating a claimant's mental impairments.  20 C.F.R. § 404.1520a.  First, an ALJ must evaluate a claimant's "pertinent symptoms, signs, and laboratory findings," and determine whether the claimant has a "medically determinable mental impairment."[1]  See id. at § 404.1520a(b).  If the ALJ determines that a claimant has a medically determinable mental impairment, the ALJ must then rate the degree of the claimant's functional limitations in four broad areas: "[a]ctivities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation."  See id. at § 404.1520a(c)(3).  Then, the ALJ must determine the severity of the claimant's mental impairment. See id. at § 404.1520a(d).  A severe impairment is one "which

---

[1] A medically determinable mental impairment results from "anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques."  20 C.F.R. § 404.1508.

significantly limits your physical or mental ability to do basic work activities." Id. § 404.1520a(c). If the ALJ finds that the claimant does have a severe impairment, the ALJ must determine whether the impairment "meets or is equivalent in severity to a listed mental disorder."[2] Id. at § 404.1520a(d)(2). If the claimant's severe mental impairment does not meet and is not equivalent in severity to any of the listed mental disorders, the ALJ must assess the claimant's residual functional capacity ("RFC"). Id. at § 404.1520a(d)(3). RFC is a measure of the most amount of work a claimant can perform despite his or her physical and mental impairments. Id. at § 404.1545.

Following this sequential analysis, the ALJ concluded that plaintiff suffered from only one severe mental impairment, bipolar disorder. (Doc. No. 8 at 25.) The ALJ concluded that plaintiff's mental impairment did not meet nor equal the severity of any listed condition, so the ALJ proceeded to the final step and assessed plaintiff's RFC. (Id.) The ALJ determined that plaintiff's bipolar disorder limited his ability to work extensively with the public, coworkers, or with high levels of stress. (Id. at 29.)

Plaintiff contends that his mental impairments are more limiting than the ALJ concluded. (Doc. No. 16 at 1.) However, substantial evidence supports the ALJ's determination.

Plaintiff listed his daily activities as preparing meals,

---

[2] The listed disorders are found in Part 404, Subpart P, Appendix 1 in Volume 20 of the Code of Federal Regulations.

vacuuming, dusting furniture, running errands, going food shopping, watching television, walking one hour a day, and visiting and receiving visits from friends.  (Doc. No. 8 at 107.) On July 10, 2003, Debra Lilly, Ph.D., completed a Psychiatric Review Technique and Mental Residual Functional Capacity Assessment of plaintiff.  (Id. at 195-219.)  She concluded that plaintiff's mental impairments caused him only mild restriction of activities of daily living, moderate restrictions in maintaining social functioning, concentration, persistence, and pace, and plaintiff had no episodes of decompensation.  (Id. at 213)  Dr. Lilly further opined that plaintiff could "learn and perform single, unskilled, work-like functions."  (Id. at 219)  On August 19, 2004, Richard Janney, P.A., observed that plaintiff occasionally chuckled and had a sense of humor, that his affect was appropriate to his mood, that he was goal directed, and he had coherent, spontaneous, clear speech.  (Id. at 466.)  On April 15, 2005, Mr. Janney opined that plaintiff possessed poor to no ability to exercise judgment with the public, interact with supervisors, deal with work stresses, and follow out complex job instructions, but that plaintiff maintained good ability to follow and carry out simple job instructions.  (Id. at 452-53.)  In August 2004, Dr. Gary Craft, M.D., observed that he "could not detect any deterioration of personal habits, constriction of interest or any restriction in physical activities related to a mental condition."  (Id. at 423.)

After reviewing this evidence, the ALJ determined that

plaintiff's mental impairments did not preclude him from doing all work, but that his bipolar disorder resulted "in an inability to perform work requiring extensive dealing with the public, co-workers, or high levels of stress." (Id. at 28.) The magistrate judge found that the ALJ's determination accurately reflected the plaintiff's mental limitations. This court agrees with the magistrate judge, and it OVERRULES plaintiff's first objection.

**2. The Weight Given to the Plaintiff's Treating Source Opinions.**

The plaintiff's second objection is that the magistrate judge erred by accepting the ALJ's decision to give less weight to the opinions of plaintiff's physicians' assistants and readjustment counselor therapist. (See Doc. No. 16 at 7.) Richard Janney, P.A., Joel Sharp, P.A., and Pete Hoosier, L.S.W., treated plaintiff, but the ALJ only mentioned Mr. Janney's and Mr. Hoosier's opinions in his summary of the medical evidence. (Doc. No. 8 at 17-28.) Additionally, the ALJ accorded little weight to Mr. Hoosier's opinion. (Id. at 25.)

**a. Richard Janney and Joel Sharp's Opinions**

An ALJ is required to consider all evidence from "acceptable medical sources." 20 C.F.R. § 404.1513(a). Physicians' assistants are not considered "acceptable medical sources," but are considered "other sources." See id. at § 404.1513(d). ALJ's *may* consider evidence from "other sources" to determine the severity of an impairment, see id., but they are not required to give the evidence any weight. See Craig v. Chater, 76 F.3d 585,

-6-

590 (4th Cir. 1996).

Therefore, the ALJ was not required to give any weight to either Mr. Janney's or Mr. Sharp's opinions.  Given this, the magistrate judge found that the ALJ's omission of Mr. Sharp's opinion from his summary of the medical evidence constituted only harmless error.  This court agrees with the magistrate judge's findings.

### b. Pete Hoosier's Opinion

Mr. Hoosier, plaintiff's readjustment counselor therapist, opined that plaintiff was "unable to work due to chronic back and neck pain and is not a candidate for future employment."  (Doc. No. 8 at 320-22.)  The ALJ determined that Mr. Hoosier's diagnosis was "conclusory and offers very little in the way of clinical signs or findings, direct observations, or analysis of symptomatology and underlying pathology."  (Id. at 24-25.)  In addition, the ALJ noted that Mr. Hoosier's opinion appeared to be primarily based upon plaintiff's self-reported symptoms, which Mr. Hoosier was not qualified to assess and beyond his area of expertise.  (Id. at 25; see 20 C.F.R. § 404.1527(d)(5) ("We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.").)  Finally, the ALJ noted that Mr. Hoosier's conclusion that plaintiff was disabled is an issue reserved to the Commissioner.  (Doc. No. 8 at 25; see

also 20 C.F.R. § 404.1527(e)(1).)  Thus, the ALJ accorded Mr. Hoosier's opinion very little weight.  (Doc. No. 8 at 25.)

The court finds that the ALJ adequately explained his decision to accord little weight to Mr. Hoosier's opinion, and that there is substantial evidence to support the ALJ's determination.  Therefore, because this court finds that the omission of Mr. Sharp's opinion from the ALJ's review of the medical evidence constituted only harmless error, and because substantial evidence supports the ALJ's decision to give little weight to Mr. Hoosier's opinion, it OVERRULES plaintiff's second objection.

**3. Step Five Analysis**

Plaintiff's third objection is that the magistrate judge erred in accepting the ALJ's finding that there is work in the national economy that plaintiff can perform.  (Doc. No. 16 at 11.)  Plaintiff argues that (1) one of the jobs the ALJ found that he could perform conflicts with the vocational expert's testimony, and (2) the ALJ erred in formulating his hypothetical question to the vocational expert.  (Id.)

An ALJ must go through a five-step sequential analysis when determining whether a claimant is disabled.  See 20 C.F.R. § 404.1520(a)(4).  If at any step in the analysis the ALJ determines that the claimant is or is not disabled, the ALJ makes his or her determination and does not proceed to the next step of

the analysis.  Id.  The fifth step in the analysis is to assess the claimant's RFC in order to determine whether or not there exists any work in the national economy the claimant can perform. Id. at § 404.1520(a)(4)(v).  In order to assist with this part of the analysis, ALJ's often utilize the assistance of vocational experts.  See Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989). "In order for a vocational expert's testimony to be relevant or helpful, it must be based upon a consideration of all other evidence in the record, and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments."  Id. (internal citation omitted).

### a.   Jobs ALJ Determined Plaintiff Could Perform

At the administrative hearing, the ALJ asked the vocational expert what jobs are available for a person of the plaintiff's age and educational background, who can perform work at the light or sedentary level, and who "has difficulties dealing with significant amount of work stresses and also difficulties dealing with the public or a lot of people . . . ."  (Doc. No. 8 at 500-01.)  The vocational expert testified that such a person could work as an office cleaner or a mail clerk at the light level, and as an assembler at the sedentary level.  (Id. at 501-02.) However, the vocational expert said that an assembler would have to deal with the public and significant levels of job-related stress.  (Id. at 502.)

Despite the fact that the vocational expert's testimony appeared to preclude assembler as a possible job for plaintiff because of the stress component, the ALJ found that plaintiff could perform work as an office cleaner, mail clerk, and assembler.  (Id. at 28.)  The magistrate judge found that this constituted only harmless error, as the vocational expert's testimony did not preclude the mail clerk and office cleaner positions.  This court agrees with the magistrate judge and accepts his recommendation.

### b. Hypothetical Question

In his RFC assessment, the ALJ found that plaintiff is "limited to tasks requiring no more than occasional climbing, balancing, stooping, kneeling, crouching, or crawling." (Id. at 25.)  However, the ALJ failed to include these limitations in his hypothetical question to the vocational expert.  (See id. at 500-03.)

The Dictionary of Occupational Titles indicates that none of the three jobs listed by the ALJ require more than occasional climbing, balancing, stooping, kneeling, crouching, or crawling. Neither the assembler nor mail clerk positions require any climbing, balancing, stooping, kneeling, crouching, or crawling. See U.S. Dep't of Labor, Dictionary of Occupational Titles, §§ 209.687-026, 701.687-010 (4th ed. 1991).  Further, an office cleaner position requires only occasional stooping, kneeling, and

crouching, and no climbing and balancing.  See id. at § 323.687-014.  Therefore, because the vocational expert identified jobs which comported to the ALJ's RFC assessment, the ALJ's failure to include plaintiff's postural limitations constituted only harmless error.

Plaintiff also argues that the ALJ's hypothetical question should have included his non-severe mental impairments.  (Doc. No. 16 at 12.)  However, plaintiff is incorrect.  An ALJ may omit non-severe impairments when posing hypothetical questions to vocational experts.  Benenante v. Schweiker, 719 F.2d 291, 292 (8th Cir. 1983); Pendley v. Heckler, 767 F.2d 1561, 1562 (11th Cir.1985); see also Reed v. Sec'y of Health and Human Servs., 804 F.Supp. 914, 924 (E.D. Mich. 1992).  Thus, this court adopts the

magistrate judge's findings and OVERRULES plaintiff's third objection.

### D.  Conclusion

In affirming the final decision of the Commissioner, the court does not suggest that plaintiff is totally free of all pain and subjective discomfort.  However, the objective medical record simply fails to document the existence of any condition or combination of conditions which would reasonably be expected to result in total disability for all forms of substantial gainful employment.  It appears the ALJ properly considered all of the

objective and subjective evidence in adjudicating plaintiff's claim for benefits. It follows that all facets of the Commissioner's decision in this case are supported by substantial evidence. The defendant's motion for judgment on the pleadings must be granted.

It is SO ORDERED this 1st day of March, 2007.

Enter:

*David A. Faber*

David A. Faber
Chief Judge